UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 04-31-DCR
CIVIL NO. 08-7010-DCR

UNITED STATES OF AMERICA                                              PLAINTIFF

V.                           RECOMMENDED DISPOSITION

TIFFANY ARNOLD                                                        DEFENDANT

\* \* \* \* \*

The Court considers a § 2255 motion filed by *pro se* Defendant Tiffany Arnold, on referral from the District Judge. *See* DE #225. A jury convicted Arnold of four counts: conspiracy to manufacture methamphetamine – 45 grams (21 U.S.C. §§ 841/846); distributing an unspecified quantity of meth in February 2004 (§ 841); distributing an unspecified quantity of meth in March 2004 (§ 841); and possessing equipment and precursors used to manufacture meth in March 2004 (21 U.S.C. § 843(a)(6)). *See* DE #176 (Judgment). The jury additionally found that Tina Jones (Arnold's cell-mate at the Whitley County Jail during March 2004) used meth distributed to her by Arnold, resulting in Jones's death. *See* DE #168 (Special Verdict Form). For the March 2004 distribution charge, and premised on Arnold's prior felony drug record, the finding implicated a mandatory life sentence. *See* 21 U.S.C. § 841(b)(1)(C); 21 U.S.C. § 851.

Arnold ultimately received two life sentences, a concurrent thirty year prison term, and a concurrent twenty year prison term. *See* DE #176 (Judgment). Defendant appealed, but the Sixth Circuit affirmed Arnold's conviction and sentence. *See United States v. Mann*, 195 F. App'x 430,

439 (6th Cir. 2006). The Supreme Court later denied Defendant's petition for writ of certiorari. *See Arnold v. United States*, 127 S. Ct. 1324 (2007).

The § 2255 motion filed by Arnold alleges two ineffective assistance of counsel claims. Both arguments focus on the March 2004 meth distribution conviction and life sentence imposed.[1] First, Movant argues that counsel should have objected to trial evidence and jury instructions referencing Jones's death because the indictment did not charge the death as attributable to Arnold. Second, Arnold asserts that counsel should have requested an official investigation of the Whitley County Jail, which would have corroborated the defense theory that jail staff or inmates commonly trafficked in illegal drugs and may have supplied the drugs that caused Jones's death.

After receiving the Government's response and Arnold's reply, the matter is now ripe for decision. For the reasons that follow, the Court recommends that the District Court DENY Arnold's § 2255 motion.

**I. Background**

In March 2004, a grand jury in the Eastern District of Kentucky returned a nine count indictment against Arnold and co-defendant Alan Mann. *See* DE #9 (Indictment). The indictment charged two conspiracies. The first meth conspiracy allegedly began in September 1999 and ended in October 2001, but the United States dismissed that count against Arnold prior to trial. *See* DE

---

[1] Arnold does not directly challenge the life term as to Count 2, the manufacturing conspiracy.

#132 and #139. A second conspiracy, which charged that Defendant conspired to manufacture and produce 50+ grams of meth, allegedly occurred between April 2002 and March 2004. *See* DE #9.

Counts three through nine alleged substantive offenses. Count three specifically charged Arnold and Mann with distributing an unspecified quantity of meth on or about February 24, 2004. The indictment charged Mann individually in counts four through six and in count nine. Count seven charged Arnold individually with distributing an unspecified quantity of meth in March 2004. Count eight charged Arnold and Mann with possessing equipment and precursors used to manufacture meth on or about March 4, 2004. *See id.* The United States tried Arnold and Mann separately. Arnold did not testify at her trial.

Testimony by law enforcement described a state police investigation focusing on Mann. *See* DE #206[2] Jason O'Bannon at 5. On February 24, 2004, a confidential informant (CI) arranged to buy meth from Mann during a recorded phone call. *See id.* Wired with audio and video equipment, the CI traveled to Mann's garage that day and purchased approximately two grams of meth with buy-money provided by police. *See id.* at 6. Arnold was at Mann's garage during the purchase. The video showed Mann asking Arnold about the purchase price and giving Arnold the money paid by the CI. *See, e.g.,* DE #206 Gerry Lynch at 46-48.

Two days after the controlled buy, local police searched Mann's garage after receiving complaints about drug trafficking by Mann. *See* DE #206 Tim Helton at 72. He was not there, but officers received permission to search Mann's garage from his mother. *See id.*; *see also* DE #206 Brian Metzger at 79. Police found substantial equipment and precursors used to manufacture meth.

---

[2] Where applicable, the Court references the trial transcript by docket entry number.

*See id*. at 80-86; *see also* DE #206 Brian Reams at 113-121.  Arnold arrived during the search.  *See* Helton at 74.  Officers asked Arnold a few questions, but otherwise found no basis at that point for arrest.  *See id*.  During the search, local police were unaware of the state/federal investigation and the previously conducted controlled buy.  *See id*.

Officers subsequently arrested Arnold and Mann on March 4, 2004 as the pair left Defendant's Corbin apartment.  *See* Metzger at 90-91.  Arnold and Mann both carried backpacks.  *See id*. at 92.  Except for ephedrine, police testified that the bags contained "everything basically [needed] to make methamphetamine."  *See* Reams at 122-26.  Police also arrested Arnold's half-sister, Angela Sowders.  *See* Metzger at 91-92.  Sowders had been at Arnold's apartment on March 4, 2004 and was leaving when law enforcement arrived.  *See id*.

At the scene, officers ordered the individuals to the ground, handcuffed them behind the back, and conducted a pat-down search for weapons.  *See id*. at 93.  Police then re-handcuffed Arnold and Sowders in the front and put them in a cruiser together.  *See* DE #206 Angela Sowders at 191-92.  Subsequently, police removed Arnold from the cruiser, directed Arnold to empty her pants pockets, and conducted another search.  *See id*. at 192.  As Arnold pulled out her pockets, Sowders testified that Arnold "cupped" or "palmed" something in her hand.  *See id*. at 192-94.  Police returned Arnold to the cruiser without handcuffs.  *See id*. at 194.  Sowders testified that Arnold put the object back in her pants.  *See id*.

Authorities ultimately placed Arnold and Sowders in the Whitley County Jail.  The inmates did not receive jumpsuits and remained in their clothes.  *See id*. at 195.  In addition, Sowders indicated that jail personnel conducted only a minimal search.  *See id*.  The jail staff placed Sowders and Arnold together in a cell with approximately eight other women.  *See id*.  The cell had two units

connected by an open hallway. Tina Jones was in a two-bunk unit with Lisa Musgrove. A larger unit accommodated Sowders, Arnold, and several other female detainees.

Sowders and Arnold mostly slept the first two days. Witnesses testified that several inmates later received meth from Arnold. Most of the inmates could not confirm whether Arnold actually brought the meth into jail. However, Kristy Taheny testified that Arnold specifically told her that she had smuggled in the meth. *See* DE #207 Kristy Taheny at 83. A second inmate, Carrie Swafford, further testified that Arnold smuggled the meth into jail by concealing it in her crotch. Swafford reportedly witnessed Arnold in the bathroom retrieving the contraband. *See* DE #208 Carrie Swafford at 12-14. A few women testified that Arnold kept the meth concealed in her sock. *See* Sowders at 205; Taheny at 74; *see also* DE #207 Brenda Caldwell at 89.

Several inmates testified to seeing inmate Tina Jones use meth, but only Swafford testified that Arnold directly provide Jones with meth. *See* Swafford at 18. Testimony indicated that various women, including Jones, used meth in the two-person unit occupied by Jones and Lisa Musgrove. The next day, Jones reportedly had blisters in her mouth and throat. Jones could barely speak, was hot, and sweated profusely. After taking a shower that morning, Jones stayed in bed throughout the day.

That night, guard Myra Phelps had Jones transported to a cell near the front desk. *See* DE #207 Myra Phelps at 103-05. Phelps testified that she and a second guard on duty monitored Jones every ten to fifteen minutes. *See id*. at 105-06. Phelps subsequently found Jones unresponsive.

Jones had a faint pulse, and Phelps began CPR. *See id.* at 107. The other guard contacted an ambulance. *See id.* EMS arrived and transported Jones to a local hospital.

The next morning an inmate returning from court informed Jones's cell-mates that Jones had died. Arnold reportedly instructed the cell-mates to "stay calm" and begin cleaning Jones's cell. *See* DE #207 Karen Dople at 54; Taheny at 77; Caldwell at 92; Swafford at 25. Police investigated the incident and interviewed the female inmates. Testimony indicated that Arnold threatened the other women and directed them to blame inmate Teresa Price. *See* DE #207 Linda Leforce at 20, 23, 39-40; Dople at 53; Taheny at 81; Swafford at 26. Price was among the women snorting meth in Jones's cell but evidently was no longer in custody by the time police started interviewing the women.

Sowders and Swafford actually first identified Price to investigators as the person responsible for distributing meth to Jones, but Swafford implicated Arnold at trial. *See* Sowders at 211; Swafford at 30-31. Defense counsel impeached Swafford. Additionally, inmates Dople, Taheny, and Twyla Lewis testified that Price actually had meth at the jail and was distributing it to the other women. *See* Dople at 56; Taheny at 74; DE #208 Twyla Lewis at 53-55. Moreover, Leforce and Lewis testified that the women had been using meth before Arnold arrived at the jail or was awake. *See* Leforce at 27; Lewis at 54-58. Both women further confirmed that inmates could obtain drugs from jail staff or trustees. *See* Leforce at 25-26; Lewis at 58. Defense counsel called two additional inmates to testify about the availability of drugs and illicit substances at the Whitley County Jail. *See* DE #209 Alisha McElfresh at 133; Shelly Williams at 141. Neither witness, however, was in the cell with Tina Jones, and McElfresh was not even in custody during March 2004.

By special verdict, the jury found (in addition to various quantity determinations) that Jones

6

had used meth distributed to her by Arnold and that such use resulted in Jones's death.[3]  *See* DE #168. Arnold appealed, arguing that the evidence involving Jones's death and corresponding jury instructions constructively amended the indictment. The indictment charged Arnold with distributing meth in March 2004, but **did not** allege that Arnold's conduct resulted in Jones's death. The death result plainly would impact potential sentencing under 21 U.S.C. § 841. For meth distribution, § 841(b)(1)(C) generally would impose a maximum of 30 years imprisonment on a defendant with a prior drug felony.[4] However, the section requires a mandatory life sentence for such a defendant "if death or serious bodily injury results from the use of such substance." *See* 21 U.S.C. § 841(b)(1)(C). Arnold's trial counsel did not raise a substantive objection on this basis.

The Sixth Circuit reviewed the claim for plain error. *See United States v. Mann*, 195 F. App'x 430, 437 (6th Cir. 2006). The Court of Appeals found a "clear variance" between the evidence, instructions, and indictment, but ultimately rejected Arnold's argument. *See id.* at 438. According to the Court, the variance, though "clear," had no effect upon a "substantial right" because the variance did not prejudice Arnold's ability to defend herself at trial. *See id.* The decision focused on repeated instances of notice to Arnold that Jones's death was at issue in the case and that the death could impact the potential sentence. *See id.*

---

[3] Based on toxicology tests, expert testimony at trial established that Jones had consumed significant levels of meth. The medical examiner testified that Jones was "morbidly obese" and had heart disease, but identified meth as the underlying cause of death. *See* DE #208 Dr. John Hunsaker at 64-65, 73. A defense expert testified that heart disease itself could have killed Jones. *See* DE #209 Dr. George Nichols at 95.

[4] The United States gave prior conviction notice, per 21 U.S.C. § 851. *See* DE #36. The notice did not, however, state the potential mandatory life term per Count Seven.

Here, Arnold simply contends that her trial counsel was ineffective for failing to raise the issue at trial. Had he done so, per Movant, the Sixth Circuit "would not have reviewed for plain error and would have reversed the conviction." *See* DE #225-2 at 15. The plain error review allegedly featured a more onerous standard than review of a preserved error, yielding cognizable *Strickland* prejudice.

Arnold further asserts that counsel ineffectively investigated her defense theory. She complains that counsel should have requested an investigation by state officials into the drug culture at the Whitley County Jail. Per Movant, developments concerning a reported state investigation from 2005 (completed after the trial) show that an investigation requested by defense counsel in early 2004 would have bolstered the defense theory that decedent Jones could have received the fatal meth from any number of possible sources. Although the defense did put on an alternative source theory, supported by some testimony, Arnold asserts that the credibility of a pending government investigation would have made a difference with the jury, which pinned the blame on Defendant. *See* DE #240 at 7.

**II. Analysis**

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255(a). Here, Arnold alleges that counsel provided ineffective assistance, in violation of her Sixth Amendment rights. *See Strickland v. Washington*, 104 S. Ct. 2052 (1984). To establish ineffective assistance under *Strickland*, Arnold must show that counsel's performance was both deficient and prejudicial. *See id*. at 2064. A defense attorney's representation is deficient if it "fell below an objective

standard of reasonableness" based on "prevailing professional norms." *See id*. at 2064-65. Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id*. at 2068.[5]

Arnold asserts two ineffective assistance claims: a) counsel failed to object to evidence and jury instructions concerning Jones's death, which resulted in constructive amendment of the indictment, and b) counsel failed to pursue a state investigation in order to show at trial that jail employees/staff may have provided meth to Jones. The Court rejects both of these arguments.

*Failure to Object to Consideration of Jones's Death*

The default maximum sentence for distributing an unspecified quantity of meth (a Schedule II controlled substance) is twenty years imprisonment. *See* 18 U.S.C. § 841(b)(1)(C). However, for a defendant with a properly-proven earlier felony drug offense, if a "death or serious bodily injury results" from such drug usage, the penalty is mandatory life imprisonment. *See id*. Defendant, citing, *e.g., United States v. Rebmann*, 226 F.3d 521 (6th Cir. 2000) argues that the aggravating

---

[5]

The United States does not assert procedural default, and the Sixth Circuit typically relegates ineffective assistance claims to collateral proceedings. *See Massaro v. United States*, 123 S. Ct. 1690, 1694 (2003)("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."); *United States v. Seymour*, 38 F.3d 261, 263 (6th Cir. 1994)("As a general rule, this Court will not review claims of ineffective assistance of counsel that are raised for the first time on appeal. 'Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue.'")(quoting *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992)(internal citations omitted).

The Court also notes Movant's *pro se* status. *Pro se* petitions receive a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief")(citations omitted).

death factor is an offense element that the indictment had to charge. Because the indictment failed to allege a user's "death or serious bodily injury," Arnold argued on appeal that the evidence and instruction involving Jones's death constructively amended the indictment. Per Arnold's appeal decision, to establish a reversible constructive amendment[6] claim, a defendant must show: 1) a variance between the indictment and jury instructions; and 2) an effect on a substantial right. *See United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000). The latter showing occurs "only when the defendant establishes prejudice in his ability to defend himself or to the overall fairness of the trial." *See id.*; *see also Mann* 195 F. App'x at 437 (applying *Prince).*

Ordinarily, the Sixth Circuit would review a constructive amendment claim *de novo*. *See Prince*, 214 F.3d at 757. The Sixth Circuit, however, reviewed Arnold's claim only for plain error because counsel had failed to object at trial. *See Mann*, 195 F. App'x at 437. Per the Court, to succeed under plain error, Arnold had to show "an error that is 'obvious' or 'clear'" and, like the "underlying claim of constructive amendment," an "effect upon substantial rights." *See id*. at 438.

Despite the "stringent standard" of review, the Sixth Circuit found a "clear variance between Arnold's indictment and the evidence presented at trial." *See id*. at 437-38 (also citing instructions as showing variance). Because the "death or serious bodily injury" component is an offense element, under Supreme Court and Sixth Circuit precedent, the element should have been "'*charged by indictment*, proven beyond a reasonable doubt, and submitted to a jury for its verdict.'" *See id*. at 438 (quoting *Jones v. United States*, 119 S. Ct. 1215, 1228 (1999) and discussing *Rebmann* along

---

[6] An actual amendment, *i.e.*, where "the charging terms themselves are abandoned and rewritten" results in presumed prejudice and, typically, reversal. *See Mann*, 195 F. App'x. at 437 n. 2. The line between a constructive amendment and variance is a "sketchy" one. *See United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007).

10

with *Castillo v. United States*, 120 S. Ct. 2090 (2000)). The Sixth Circuit, however, rejected the constructive amendment claim because Arnold failed to show a corresponding effect upon "substantial rights." According to the Circuit, the variance did not prejudice Arnold's "ability to mount a defense or otherwise render[] her entire trial unfair." *See Mann,* 195 F. App'x. at 438. The Court focused on notice at Defendant's initial appearance that the United States intended to prove "that Jones's death resulted from Arnold's distribution, with the possible result of a life sentence." *See id.* Further, Arnold did retain an expert on cause of death, and the trial court assured Defendant's awareness of possible penalties. *See id.* To that list of notice instances, the undersigned would add that the penalty sheet appended to the indictment indicated life imprisonment as a result for a Count 7 conviction if Arnold had a prior drug felony and death resulted from controlled substance usage. Further, in seeking an expert, defense counsel plainly argued that he needed the expert to counter the arguments of the United States linking Arnold to Jones's death. *See* DE #41 (motion for expert stating justification).

Based on counsel's failure to object, Arnold contends that her appeal was unsuccessful because the resultant plain error standard of review was "too great to overcome." Movant thus asserts: "Had counsel prepared and objected as required, the Appellate Court would have reviewed the case under a de novo standard of review and would have remanded Petitioner's case for a new trial." *See* DE #225-2 at 27. Indeed, Arnold contends that the Sixth Circuit "explicitly stated" that she would have received a new trial. *See* DE #240 at 4.

The Court flatly disagrees with that characterization of the decision on direct appeal. The Sixth Circuit nowhere stated in its opinion that Arnold would have prevailed if a *de novo* standard of review applied. In fact, although the Circuit applied plain error review, the decision treated the

11

required prejudice showing as *identical* under either de novo or plain error review: "*As with the underlying claim* of constructive amendment, the appellant must also demonstrate an effect upon substantial rights."  *See Mann*, 195 F. App'x at 438 (emphasis added).  The Sixth Circuit, which did find error despite the limited review, found no effect upon Defendant's substantial rights, based on the notice events, actual case preparation/presentation, and obvious defense awareness of the death effect.  By referencing an identical standard for both a de novo and plain error prejudice analyses, the Court strongly indicated that irrespective of counsel's failure to object, the review posture would not have changed the result.  *See also Prince*, 214 F.3d at 756-57 (performing de novo review despite defendant's failure to object to evidence and instruction variance at trial).

The Court did expressly hold that the variance found did not affect a substantial right of Defendant.  A prejudice finding would be required under either review standard scenario.  Because Arnold pursued the constructive amendment theory and lost on direct appeal, the undersigned is constrained and bound by the Sixth Circuit's substantial rights analysis.  Absent an exceptional circumstance, such as an intervening change in law, a § 2255 litigant may not relitigate a matter adversely decided on appeal.  *See Jones v. United States,* 178 F.3d 790, 796 (6th Cir. 1999).  Per the Sixth Circuit's final ruling, a necessary predicate for relief under a constructive amendment theory – prejudice from the error – is lacking, irrespective of review standard.  As such, even if Arnold prevailed on *Strickland*'s first prong – showing that counsel was deficient for not objecting[7] – Movant would be unable to show a reasonable probability that the conduct would have made a

---

[7] Per *Strickland*, the Court need not reach the first prong if a prejudice analysis is dispositive. *See Strickland*, 104 S. Ct. at 2069.

12

difference in the outcome.[8]

Nor is it clear that a failure to object theory, presented as an ineffective assistance claim, would invoke a lower prejudice standard than plain error. The Eleventh Circuit recently stated: "When a claim of ineffective assistance is based on a failure to object to an error committed by the district court, that underlying error must at least satisfy the standard for prejudice that we employ in our review for plain error." *Gordon v. United States*, 518 F.3d 1291, 1298 (11th Cir. 2008). Other courts have echoed that posture, characterizing "[t]he standard for prejudice under *Strickland* [as] virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis." *See, e.g., United States v. Becht*, 403 F.3d 541, 549 (8th Cir. 2005); *United States v. Williams*, 358 F.3d 956, 967 (D.C. Cir. 2004)(rejecting claim under *Strickland* prejudice prong based on failure to satisfy plain error and describing analyses as

---

[8]

The Court acknowledges independent concern over the constructive amendment analysis. The Sixth Circuit plainly recognized that the "if death results" language in § 841 defines a separate offense element that must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict. *See Mann*, 195 F. App'x. at 438. If the indictment charged one offense (the meth distribution count without an aggravating factor) and the evidence/instruction led to jury consideration of another offense (the meth distribution count with the aggravating "if death results" factor), then the change arguably worked a constructive amendment, not a variance, of the indictment. *See Prince*, 214 F.3d at 757 (noting, "A constructive amendment occurs when 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.' *United States v. Manning,* 142 F.3d 336, 339 (6th Cir.1998) (quoting *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir.1986)). Both amendments and constructive amendments are considered *per se* prejudicial and warrant reversal.") If inclusion of "if death results" yielded a separate offense, which is what the decision on Arnold's direct appeal states, then surely the evidentiary and instruction changes resulted in Arnold's conviction for an offense *distinct from* that for which she was indicted. A jury did find the critical facts, but the grand jury did not indict on the issue. However, the Sixth Circuit did not analyze the matter as presenting a constructive amendment, and this Court, of course, defers to and follows the appellate treatment.

analogous).

Thus, the Sixth Circuit previously decided that the trial court's treatment did not affect a substantial right of Defendant, foreclosing reconsideration under § 2255. The Court specifically found that Arnold had sufficient notice of the relevant charge and an opportunity to defend. That determination would prevent satisfaction of the *Strickland* prejudice prong, because even a de novo evaluation of the issue, as previously and explicitly framed by the Court of Appeals, would not reasonably be expected to produce a different result. As such, the Court rejects Arnold's claim premised on ineffective assistance and constructive amendment.[9]

*Failure to Investigate*

Next, Arnold complains that counsel failed to demand a state investigation during the

---

[9]

Petitioner's argument does not encompass but may logically raise a question concerning the Count 2 sentence. The jury found that the conspiracy involved manufacture of 45 grams, which is less than the 50 grams charged. [The United States misstates the amount the jury found as 7.584 kilograms, *see* DE #238 at 2, apparently confusing Arnold's verdict with Mann's verdict.] As such, the sentence properly would have fallen under 21 U.S.C. § 841(b)(1)(B) rather than 841(b)(1)(A). The prior felony conviction presumably applied, *see* DE #36, although the conviction relied upon became final during the term of the Count 2 conspiracy. *See United States v. Hughes*, 924 F.2d 1354 (6th Cir. 1991); *United States v. Gonzalez*, 257 Fed. App'x. 932, 943 (6th Cir. Dec. 17, 2007)(citing *Hughes* and applying enhancement based on mid-conspiracy conviction). With a prior felony and a § 841(b)(1)(B) conviction for 45 grams, Arnold would have faced a term of ten years to life. A death attributable to the manufacturing would invoke a mandatory life term, but the jury did not find (and was not queried about) a relationship between the meth-making conspiracy and the death of Tina Jones. However, and unlike the Count 7 scenario, the death element would not have established a new maximum, under Count 2, but rather only a new mandatory minimum. At sentencing, the District Court clearly indicated it would have imposed a life term with or without the applicable mandatory minimum. *See* DE #212 at 9 ("I believe that a sentence of life is not only compelled by the statute under the Guidelines but also by the factors contained in Title 18 that the Court has to look to.").

pendency of her criminal charges. Based on documents tendered by Arnold, it appears that Kentucky authorities closed the Whitley County jail[10] in August 2005 for safety and security violations, and some of the concerns included drug trafficking allegations. Arnold asserts that counsel should have initiated a state investigation, and that testimony from government officials would have impressed the jury and bolstered a defense theory that Jones secured meth from a source other than Defendant. Movant reports that she and her family frequently advised counsel about the drug trafficking at the jail, but Arnold complains that counsel refused to investigate. Although defense counsel actually obtained testimony from several inmates describing drug trafficking by inmates and/or jail staff, Arnold contends that such testimony did "not carry the substantial weight that could have been presented" by state officials. *See* DE #240 at 7. In essence, Arnold argues that government testimony describing a pending investigation would have provided the credibility needed to convince the jury that Defendant was not the source of the meth that killed Jones. *See id.* (citing key as jury hearing "that additional methamphetamine or other drugs were being introduced into the facility from a 'credible' perspective").

The Court rejects Arnold's contentions. According to testimony describing the police interviews, two inmates originally accused Teresa Price of distributing meth to Jones; one inmate identified Angela Sowders, and another inmate accused Carrie Swafford. *See* DE #206 Sowders at 211; #207 Leforce at 36; #208 Swafford at 30-31; #207 Lewis at 70. Based on the statements to police accusing Price and testimony indicating that she possessed meth at the jail, counsel reasonably attempted to implicate Price for distributing meth to Jones. This undoubtedly is in the

---

[10] It appears the closure may have affected a new facility, opened in August 2004, well after Arnold's incarceration period.

category of "sound trial strategy." *See Strickland*, 104 S.Ct. at 2065. Counsel enjoys wide deference and latitude in such decisions. Further, counsel did procure and present (or attempt to present) testimony indicating drug availability at the jail, and the evidence showed that meth and other drugs generally were available to inmates even prior to Arnold's arrest. *See, e.g,* DE #207 Leforce at 25-27; DE #208 Lewis at 54-57; #209 McElfresh at 133-35; Shelly Williams at 141. Thus, counsel presented the exact theory Arnold cites.

Arnold's allegations as to a potential state investigation are speculative. An investigation may have occurred resulting in jail closure in the summer of 2005; whether an investigation could have commenced in March of 2004, on counsel's request, yielding evidence probative on the questions at issue, simply is too vague to raise doubt as to counsel's performance or the trial result. Further, counsel did present evidence concerning alternative meth sources, specifically eliciting proof about drug trafficking in the jail, at the relevant time, by other inmates and by jail staff. The record also shows that counsel sought and received discovery concerning jail inspections by the Commonwealth of Kentucky during the period around and prior to the 2004 events. *See* DE #68 (referencing documents produced under subpoena).

Finally, the District Judge carefully regulated the admissibility of evidence concerning conditions at the jail. At trial, the Court admitted testimony about drug use and drug availability in March of 2004, the time in question. Indeed, several witnesses did testify that drugs were freely available in the jail, and the Court permitted testimony concerning meth circulation prior to Arnold's arrest. However, the trial judge generally blocked testimony about the jail's drug culture and did not permit testimony concerning other time frames, focusing instead on the question of evidence linking drug usage to the time of Arnold's incarceration/Jones's death. As such, the record clearly

16

shows that, at trial, the Court would not have permitted general evidence about the jail's drug climate. *See* DE #209 at 138-39 (noting admission of evidence that drugs were generally available but declaring that the jail itself was "not the defendant"). Additionally, whether the pendency of a state investigation would be an admissible fact at all is dubitable.

The Court rejects Movant's *Strickland* claim related to counsel's investigation. Without making a finding as to the performance prong, the Court simply finds no reasonable basis for believing that counsel's described inaction would have had any impact on the trial result.

### III. Discovery – Evidentiary Hearing – Appointment of Counsel

Arnold's § 2255 motion includes a request to conduct discovery. Unlike a typical civil litigant, a habeas petitioner is not entitled to discovery as a matter of ordinary course. *See Bracy v. Gramley*, 117 S. Ct. 1793, 1796-97 (1997); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)("Habeas petitioners have no right to automatic discovery."); *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004)(citing *Stanford*). Instead, Rule 6 of the Rules Governing Section 2255 Proceedings closely regulates discovery in the habeas context. Under that rule, the moving party "must provide reasons for the request," and the Court may grant the discovery motion only "for good cause." *See* Rule 6(a)-(b). "Good cause" exists when "specific allegations" are before the court that would establish reason to believe that the petitioner may be entitled to relief "'if the facts are fully developed.'" *See Bracy*, 117 S. Ct. at 1799 (quoting *Harris v. Nelson*, 89 S. Ct. 1082, 1091 (1969)); *see also Williams*, 380 F.3d at 974. Because Arnold's claims hinge primarily on legal analysis of an established record, not disputed facts, the Court finds that Arnold has not shown "good cause" to conduct discovery.

Arnold also requests an evidentiary hearing. Section 2255 requires a hearing "[u]nless the

17

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b). The Court need not conduct a hearing, however, if the allegations in the petition are conclusory, inherently incredible, or refuted by the record. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Here, the record and clear legal authority refute Arnold's ineffective assistance claims. The primary claim falls under the effect of the prior appellate ruling, and the investigation claim does not warrant additional evidentiary development. Accordingly, the Court finds no justification for a hearing.

Finally, Arnold seeks appointment of counsel for discovery and hearing purposes. A prisoner has no constitutional right to counsel in a habeas proceeding. *See Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005). The statutory authority governing appointment is in 18 U.S.C. § 3006A(a)(2)(B). Under the Criminal Justice Act, the Court may appoint counsel in a § 2255 action whenever it "determines that the interests of justice so require." *See id*. Absent an evidentiary hearing or discovery issue, the appointment of counsel in a habeas proceeding is thus within the Court's discretionary assessment. In the posture of this record, the Court finds no basis or justification for appointment of counsel.

## IV. Certificate of Appealability

A certificate of appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The reviewing court must

18

indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Here, the Court finds disposition of the second argument not fairly "debatable." Thus, Arnold has not made a "substantial showing" as to that claimed denial of right. However, the primary argument warrants additional appellate consideration. Inclusion of the aggravating § 841 "results in death" element arguably did present a constructive amendment; although the Sixth Circuit did not treat the matter as a reversible constructive amendment on direct appeal, the preclusive effect of that decision, as to this filing, may be fairly debated. As such, in the § 2253 context, the Court recommends that the District Court refuse to certify any issue for appeal except the question of whether the prior appellate decision forecloses § 2255 relief based on adjudicated lack of prejudice.

**V. Conclusion**

For the reasons stated in this decision, the Court:

1) DENIES Arnold's motion for discovery;[11]

2) DENIES Arnold's request for an evidentiary hearing;

3) DENIES Arnold's motion for appointment of counsel;

4) RECOMMENDS that the District Court DENY, with prejudice, Arnold's § 2255 application for a writ of habeas corpus, *see* DE #225; and

5) RECOMMENDS that the District Court refuse a certificate of appealability except on the

---

[11] To the extent Arnold's effort to supplement the record is an additional motion, see DE #228, the Court GRANTS that request.

stated terms.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b).  Within ten days after being served with a copy of this  decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).         This the 20th day of October, 2008.

Signed By:
*Robert E. Wier*  /s/ REW
United States Magistrate Judge