UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 6: 04-031-DCR-2 |
| ) | |
| V. ) | |
| ) | |
| TIFFANY ARNOLD, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

*** *** *** ***

Defendant Tiffany Arnold has again filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). [Record No. 291] Arnold contends that her health issues and the "dangerous living conditions" at her place of incarceration make her more susceptible to a severe COVID-19 infection. [*Id.*, p. 1, 9–13] Arnold's motion will be denied because she has failed to identify extraordinary and compelling reasons for release and because the factors outlined in 18 U.S.C. § 3553(a) do not support a sentence reduction.

I.

In November 2004, a jury found Arnold guilty of one count of conspiring to manufacture 45 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of possession of equipment, products, and materials used to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6), and two counts distributing a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). [*See* Record No. 168.] The jury found that Arnold's distribution activity resulted in the death of an inmate with whom she was incarcerated. She was sentenced to life imprisonment on March 7, 2005.

[Record No. 176, p. 3] Arnold appealed but the United States Court of Appeals for the Sixth Circuit affirmed both the conviction and sentence. [Record No. 213] This Court then denied her initial motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 on November 14, 2008. [Record Nos. 246 and 248] The Sixth Circuit affirmed that denial on January 7, 2011. [Record No. 254] Arnold subsequently filed two successive § 2255 petitions, each of which was denied authorization by the Sixth Circuit. [Record Nos. 266; 270; 275; 287]

Defendant Arnold is currently incarcerated at Tallahassee FCI. She has served approximately 17 years of her life sentence. *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited March 30, 2022).

## II.

A court may grant a compassionate release motion under § 3582(c)(1)(A)(i) after engaging in a three-step inquiry: (1) "the court must find that extraordinary and compelling reasons warrant [a sentence] reduction"; (2) the court must "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the court must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (internal quotation marks omitted) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). "Congress provided no statutory definition of 'extraordinary and compelling reasons,' instead delegating that task to the [United States] Sentencing Commission." *Id.* (citing 28 U.S.C. § 994(t)).

The Sentencing Commission subsequently issued U.S.S.G. § 1B1.13, a policy statement with Application Notes that prescribe categories of "extraordinary and compelling reasons" for a sentence reduction. *See id.*; U.S.S.G. § 1B1.13 n.1. But this is "not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district

courts need not consider it when ruling on those motions."[1] *Elias*, 984 F.3d at 519. Accordingly, "district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id.* at 519-20 (citations omitted).

But there are legal standards that govern that discretion. *See United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). Courts look to the ordinary meaning of the terms at the time Congress enacted the statute. *Id.* Thus, "extraordinary" means "most unusual," "far from common," and "having little or no precedent." *Id.* (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). And "compelling" means "forcing, impelling, driving." *Id.* (Webster's Third New International Dictionary: Unabridged at 463).

### III.

Arnold argues that her "significant health issues" combined with the "rapidly deteriorating conditions at FCI Tallahassee" place her at risk of imminent harm or death from a COVID-19 infection.[2] [Record No. 291, p. 1, 9–13] She also asserts that her life sentence was "unlawfully imposed" and that the "questions surrounding her guilt" require her release.

---

[1] A court *may* consider the policy statement as part of its discretionary inquiry into whether extraordinary and compelling reasons exist. *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021). The policy statement may be instructive when a defendant alleges extraordinary and compelling reasons that relate to its provisions. *See, e.g.*, *United States v. Gibson*, No. 5: 14-074-DCR, 2021 WL 4768244, at *2 (E.D. Ky. Oct. 12, 2021).

[2] The only health issue that Arnold credibly claims to suffer is hypothyroidism—although this appears well-managed by BOP medical personnel. [Record No. 291, p. 1; *see, e.g.*, Record No. 295, p. 147 (discussing the treatment history of the defendant's hypothyroidism).] Arnold also claims that her health issues include a "chronic heart condition" or "chronic heart defect conditions," but this claim is belied by her medical records. [*See* Record No. 295.] Arnold's records do indicate that she has complained of heart palpitations, but she denied any chest pain or shortness of breath with activity. [*Id.*, p. 143] Further, an EKG completed after these complaints did not reveal any serious defect, and her cardiovascular exams consistently demonstrate normal findings. [*Id.*, p. 144, 149, 159, 245–46, 253]

[*Id.*, p. 13–16] However, neither of these arguments constitute an extraordinary and compelling reason under the statute. *See Hunter*, 12 F.4th at 562 (discussing the definition of extraordinary and compelling reasons).

Turning to Arnold's COVID-based arguments, it is clear that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). This is true even where a defendant may have serious conditions that make her susceptible to contracting a severe case of COVID-19. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021). "After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *Lemons*, 15 F.4th at 751. And while prison conditions may present "unique challenges" to COVID-19 mitigation, such as the inability to social distance as much as one might prefer, available vaccines still significantly reduce risks associated with the virus.[3] *Id.* "[F]or people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.* (quoting *Broadfield*, 5 F.4th at 803)).

Arnold admits that she has received both doses of the Moderna vaccine. [Record No. 291, p. 2] And despite her claims that Tallahassee FCI is not offering booster shots, she offers no evidence to support this position. In fact, BOP policy suggests that the opposite is true.

---

[3] Further, there is no indication that the BOP is unable to mitigate the risks that COVID-19 presents to Arnold. Contrary to her assertion that the virus has "run rampant" throughout Tallahassee FCI, current BOP data shows *zero* active COVID-19 diagnoses at her place of incarceration. [Record No. 291, p. 9]; *see COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 30, 2022).

*See COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Mar. 30, 2022) (explaining that booster shots are made available to all eligible inmates). Arnold cannot reasonably claim that prison conditions, her health, and her vaccination status justify early release. In short, her COVID-19 arguments do not present extraordinary and compelling reasons justifying a reduced sentence.[4]

The factors to be considered under 18 U.S.C. § 3553(a) also counsel against Arnold's compassionate release request. First, the nature and circumstances of the defendant's offenses do not support relief. *See* 18 U.S.C. § 3553(a)(1). Arnold was arrested in this matter in possession of a backpack containing the working components of a methamphetamine laboratory. [Record No. 280, p. 7] Her arrest came roughly one week after a controlled buy during which she sold two grams of a methamphetamine mixture to a confidential informant. [*Id.*, p. 5] After being placed in the Whitley County Jail, Arnold began distributing cocaine and methamphetamine she smuggled into the jail to other inmates. [*Id.*, p. 8] One such inmate—Tina Jones—died of acute methamphetamine toxicity the morning after ingesting

---

[4] Although it does not appear that Arnold asserts her health issues as an independent basis for relief separate from her COVID-19 claims, they would not be sufficient even if she were to do so. As discussed above, hypothyroidism is the only documented malady of which the defendant complains. [*See* Record No. 291, p. 1; Record No. 295.] This condition appears well-managed by BOP medical personnel, and Arnold does not allege that it "substantially diminishes [her] ability . . . to provide self-care within the environment of a correctional facility." [*See generally* Record No. 295 (reflecting the BOP's treatment of the defendant's hypothyroidism)]; U.S.S.G. § 1B1.13 n.1(A). Accordingly, Arnold's health condition does not constitute an independent ground for relief. *Cf.* U.S.S.G. § 1B1.13 n.1(A) (discussing medical conditions that *do* constitute extraordinary and compelling reasons justifying relief, including terminal cancer, ALS, and advanced dementia).

some of Arnold's drugs. [*Id.*] Accordingly, a substantial sentence is required to reflect the seriousness of the offenses and provide a just punishment. *See* § 3553(a)(2)(A).

Next, Arnold has a troubling criminal and disciplinary history. *See* § 3553(a)(1) (requiring consideration of the defendant's history and characteristics). Contrary to her assertion that she is a "first time" offender, Arnold has a prior drug conviction, as well as several prior arrests related to the possession and manufacture of methamphetamine. [Record No. 291, p. 16; Record No. 280, p. 11–13] Further, her disciplinary record while in custody includes unauthorized physical contact, fighting with another inmate, interfering with count, and trying to smuggle a note to an inmate in general population. [Record No. 293-2, p. 1–2] Arnold also has a years-long history of drug addiction and a limited employment record. [Record No. 280, p. 14–15] These are aggravating – not mitigating – factors when considering the present motion for early release from incarceration. The undersigned remains convinced that Arnold's original sentence is necessary to protect the public from further crimes she may commit. *See* § 3553(a)(2)(C).

Finally, while Arnold's rehabilitative efforts are commendable, they do not change the overall calculus. The § 3553(a) analysis weighs against her motion and provides an independent reason to deny relief.

### IV.

Arnold's remaining arguments are effectively a collateral attack on her underlying conviction and sentence. [*See* Record No. 291, p. 13–16.] Accordingly, the Court treats this portion of her motion as a second or successive § 2255 petition.

Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239, amended § 3582(c)(1)(A) to allow prisoners to bring motions to reduce their sentences in

certain instances, but § 3582 does not provide an alternative means of collaterally attacking a conviction or a sentence. "[W]hen a motion titled as a § 3582 motion otherwise attacks the petitioner's underlying conviction or sentence, that is an attack on the merits of the case and should be construed as a § 2255 motion." *United States v. Carter*, 500 F.3d 486, 490 (6th Cir. 2007) (applying the holding of *Gonzalez v. Crosby*, 545 U.S. 524 (2005) to motions nominally brought under § 3582). Defendants, therefore, may use § 3582(c) to move for reductions of sentences when § 2255 is inapplicable, *e.g.*, when they assert compassionate release claims unrelated to the validity of their underlying convictions or sentences. However, they may not use it as a means of getting around the requirement that they obtain circuit court authorization to file a second or successive § 2255 motion when they ostensibly attack underlying sentences or convictions. *See id.* (citing *In re Sims*, 111 F.3d 45 (6th Cir. 1997)) (indicating that such § 3582 movants should apply for authorization of a second or successive § 2255 motion as provided by 28 U.S.C. § 2244(b)(3)).

Arnold's motion clearly asserts a collateral attack on her underlying conviction and sentence. In a section titled "Circumstances Surrounding Arnold's Conviction and Sentence", she argues that the evidence presented against her has "tarnished with age," that her conviction is "fundamental[ly] unfair," and that her life sentence was "unlawfully imposed." [*Id.*, p. 13–14] She also insinuates that there are "questions surrounding her guilt," although she does not elaborate. [*Id.*] To the extent Arnold brings her motion under § 3582, it must be construed as a second or successive § 2255 petition. Because this Court lacks jurisdiction to hear such a petition, this portion of Arnold's motion will be transferred to the Sixth Circuit for further consideration. *See* 28 U.S.C. §§ 2244(b)(3) and 2255(h).

## V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendant Tiffany Arnold's motion [Record No. 291] is **DENIED** to the extent she seeks relief under 18 U.S.C. § 3582(c)(1)(A).

2. Arnold's motion [Record No. 291] is deemed to include a claim that effectively renders it a second or successive motion for collateral relief under 28 U.S.C. § 2255. Therefore, the Clerk of Court is **DIRECTED** to transfer Arnold's motion to the United States Court of Appeals for the Sixth Circuit in accordance with 28 U.S.C. § 2244 and Rule 9 of the Rules Governing Section 2255 Cases in the United States District Courts.

Dated: April 1, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky