UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal Action No. 6: 04-031-DCR-2 |
| V. | ) |
| TIFFANY ARNOLD, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

*Pro Se* Defendant Tiffany Arnold has filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). [Record No. 313] On November 4, 2004, a jury convicted Arnold of four counts of manufacturing, possessing, and distributing methamphetamine. [Record Nos. 168, 315] She received a sentence of life imprisonment, plus an additional 50 years, on March 7, 2005. [Record No. 315] But Arnold believes that "changed circumstances" from earlier motions now make her eligible for relief. [Record No. 313] Arnold's motion will be denied because she fails to present any extraordinary and compelling reason why her sentence should be reduced when measured against the seriousness of her offenses.

I.

Arnold is a 52-year-old prisoner incarcerated at the Federal Correctional Facility Tallahassee after being convicted by a jury for one count of conspiring to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of possessing equipment, products, and materials used to manufacture methamphetamine in violation of 21

-1-

U.S.C. § 843(a)(6), and two counts of distributing methamphetamine in violation of f 21 U.S.C. § 841(a)(1). [Record No. 315]  The jury also found that the death Tina Jones, Arnold's former Whitley County Jail cellmate, was caused by the defendant's distribution of methamphetamine to her while in custody. [Record No. 168]

This Court denied Arnold's initial motion to vacate, set aside, or correct her sentence filed pursuant to 28 U.S.C. § 2255 on November 14, 2008.  [Record Nos. 246 and 248] The United States Court of Appeals for the Sixth Circuit affirmed that denial on January 7, 2011. [Record No. 254] Arnold subsequently filed two second or successive § 2255 petitions, each of which was denied authorization by the Sixth Circuit.  [Record Nos. 266; 270; 275; 287].

Arnold later filed a motion for a sentence modification under the First Step Act pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  That motion focused on health risks associated with the COVID-19 pandemic.  [Record No. 283] Arnold's motion was denied without prejudice on June 9, 2020. [Record No. 284]  On April 1, 2022, the Court then denied a second motion for compassionate release because the defendant failed to identify any extraordinary and compelling reasons justifying her release.  [Record No. 297]

Arnold current motion seeks a reduction of the original sentence imposed under 18 U.S.C. § 3582(c)(1)(A)(i), citing changed circumstances from her previous claims.  [Record No. 313]  As of this date, Arnold has served more than 18 years of her lifetime sentence.  *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited October 12, 2023).

## II.

After fully exhausting all administrative remedies, prisoners seeking compassionate release must demonstrate that: (i) extraordinary and compelling circumstances warrant a

-2-

sentence reduction; (ii) a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable; and (iii) a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. § 3582(c)(1)(A) (amended 2018).

Prior to enactment of the First Step Act of 2018, only the United States Bureau of Prisons ("BOP") could request compassionate release on a defendant's behalf. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (citing § 3582(c)(1)(A) (2002)). However, the First Step Act eliminated this gatekeeping role and allowed prisoners to move for relief when the BOP declined to act. *Id*. As of today, however, the Sentencing Commission has not finally adopted a policy statement that applies when a defendant (as opposed to the BOP) files a motion for compassionate release. *Id*. Accordingly, the Court only need consider whether the defendant has identified extraordinary and compelling reasons for a sentence reduction and whether the § 3553(a) factors support granting the relief sought. *Id*.

### III.

Arnold's current motion includes many of the arguments that she made in previous motions for relief under §3582(c). She concedes that her "chronic heart condition, hypothyroidism, and chronic defect conditions" are insufficient factors alone to justify a sentence reduction. [Record No. 313, p. 12] She claims, however, there are "changed circumstances in the case since the Court denied compassionate release." [*Id*. at 11] Arnold now argues that "extraordinary and compelling" reason justifying compassionate release is her "unusually long sentence." [*Id*.] The defendant also points to a variety of "rehabilitative and life skills programs" in which she participated, but she raises nothing that constitutes an extraordinary and compelling reason to reduce her sentence under the statute. *See United*

*States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (discussing the definition of extraordinary and compelling reasons).

Regarding her COVID-based argument, Arnold again claims that the "pandemic places her in danger." [Record No. 313] But according to relevant medical records, her medical conditions have been effectively treated and do not substantially increase her susceptibility to infection. The mere risk of contracting the virus is not a compelling reason to justify a sentence reduction. Case law is now clear that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). This is true even in situations where a defendant may have serious conditions that make her susceptible to contracting a severe case of COVID-19. *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021). "After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *Lemons*, 15 F.4th at 751. And while prison conditions may present "unique challenges" to COVID-19 mitigation (such as the inability to social distance as much as one might prefer), available vaccines still significantly reduce risks associated with the virus. *Id.* "[F]or people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.* (quoting *Broadfield*, 5 F.4th at 803)).

Aside from recounting ongoing health issues and reciting the continued risk of contracting COVID-19, Arnold's only new claim is that a sentence reduction is necessary because she purportedly no longer poses a danger to the public. Implicit in her argument is that she is entitled to a reduced sentence following passage of the First Step Act because the

law offers relief to reformed inmates. In support, Arnold cites academic commentary on deterrence and provides examples of sentence reductions by courts for defendants who participated in some form of rehabilitation. [Record No. 313, p. 10] Many inmates incarcerated for violent and non-violent offenses nationwide choose to participate in rehabilitative programs, which provide valuable and necessary skills for post-incarceration life. In other words, participation in these programs is hardly unique. But rehabilitation alone cannot wipe the slate clean or excuse the conduct for which a defendant is incarcerated. Although Arnold's efforts are commendable, they do not rise to the level of being either extraordinary or compelling.

Next, the factors under 18 U.S.C. § 3553(a) also counsel against Arnold's present request. To begin, the nature and circumstances of the defendant's offenses do not support relief. *See* 18 U.S.C. § 3553(a)(1). Arnold was arrested in this matter in possession of a backpack containing the working components of a methamphetamine laboratory. [Record No. 315] Her arrest came roughly one week after a controlled buy during which she sold methamphetamine to a confidential informant. [*Id.*] And after being placed in the Whitley County Jail, Arnold distributed cocaine and methamphetamine she smuggled into the jail to other inmates. [*Id.*] One inmate—Tina Jones—died of acute methamphetamine toxicity the morning after ingesting some of Arnold's drugs. [*Id.*] The lengthy sentence imposed is necessary to reflect the seriousness of the offenses and provide just punishment. *See* § 3553(a)(2)(A).

In addition to the foregoing reasons, Arnold has a troubling criminal and disciplinary history. *See* § 3553(a)(1) (requiring consideration of the defendant's history and characteristics). This includes a prior drug conviction, as well as several arrests related to the

possession and manufacturing of methamphetamine. [Record No. 291, p. 16; Record No. 177, p. 11–13] Arnold's disciplinary history while in custody includes unauthorized physical contact, fighting with another inmate, interfering with officials taking count, and trying to smuggle a note to an inmate in general population. [Record No. 315] And Arnold has a long history of drug addiction and a limited employment record. [Record No. 177, p. 14–15]

The undersigned remains convinced that Arnold's original sentence is appropriate when measured against the circumstances surrounding her offenses and as means to protect the public from additional crimes that she may commit. *See* § 3553(a)(2)(C). Again, while Arnold's rehabilitative efforts are commendable, the overall sentencing calculus remains unchanged. The § 3553(a) factors weigh against the present motion and provide an independent basis to deny relief.

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Arnold's motion for compassionate release [Record No. 313] is **DENIED**.

Dated: October 17, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky